UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RACHELLY MARTINEZ RAMOS,

    Plaintiff,

v.                                             Case No: 6:17-cv-1975-Orl-TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

## OPINION AND ORDER[1]

Plaintiff brings this action pursuant to the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of Defendant, the Commissioner of the Social Security Administration denying her claims for Supplemental Security Income under the Act. Upon review, the Commissioner's final decision in this case is **AFFIRMED**.

### Background[2]

On February 12, 2013, Plaintiff protectively filed an application for Supplemental Security Income, alleging disability commencing on January 1, 2011, due to "learning disabled, lower back condition" (Tr. 235-243, 263). Her claims were denied initially and on reconsideration and Plaintiff requested and received a hearing before an administrative law judge ("ALJ") (Tr. 127-132, 136-140, 64-90, 141-143). On September 28, 2016, the ALJ found Plaintiff not disabled and issued his unfavorable decision (Tr. 16-37). On September 14, 2017, the Appeals Council denied Plaintiff's request for review (Tr. 1-8).

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.
[2] The information in this section comes from the parties' joint memorandum (Doc. 19).

Accordingly, the ALJ's decision became the Commissioner's final decision. This appeal timely followed (Doc. 1).

## The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and published in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

Here, the ALJ performed the required five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date (20 CFR 416.971 et seq.) (Tr. 24). At step two, the ALJ determined that Plaintiff is severely impaired by a history of intellectual disability/borderline intellectual functioning, minimal degenerative joint disease of the lumbar spine and a mood disorder (20 CFR 416.920(c)) (Tr. 24). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 24). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a range of medium work as defined in 20 CFR 416.967 (c) except with sitting, standing and walking for up to six hours each in an eight-hour day with customary breaks; she can lift and carry up to 50 occasionally and 25 or less more frequently; with no ability to communicate in English, but can communicate in Spanish; she can frequently use of the extremities for arm, hand and foot/pedal controls; she can perform frequent climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; she can do frequent balancing, stooping, crouching, crawling and kneeling; she has no limitations on reaching in all directions, handling, fingering and feeling; she has no limitations on speaking, seeing or hearing; she should do no work at unprotected heights or have exposure to dangerous moving machinery; she is limited to performing simple, rote and repetitive tasks in a well-structured work environment where the job tasks do not vary from one day to the next; she cannot interact with the general public; can interact occasionally with coworkers and supervisors and she is is precluded from jobs requiring that she meet a strict production goal or quota such as from assembly or pay-by-the-piece work and she would work better with things as opposed to other people.

(Tr. 27).

At step four, the ALJ determined that Plaintiff had no past relevant work (Tr. 31). After applying the Medical-Vocational Guidelines as a framework for decision making and considering a vocational expert's testimony, Plaintiff's age, education, work experience,[3] and RFC, the ALJ found, at step five, that Plaintiff could perform a significant number of jobs in the national economy (Tr. 31-32) and was therefore not under a disability (Tr. 32).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004).

---

[3] Plaintiff was twenty-seven years old on the date of the ALJ's decision (Tr. 235). She speaks Spanish and is unable to speak and understand English (Tr. 262). She attended special education classes and does not have any past work experience (Tr. 79, 264). She also participated in a vocational training program (Tr. 71, 409).

Findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (*per curiam*); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

### Development of the Record

The administrative record before the ALJ included a three-page report from Angel L. Fontan Ortiz, Ph.D., stamped "received October 4, 2012" (Tr. 330-332). The report, which is in Spanish, was translated at the request of the Commissioner. However, only the first two pages of the translated report were provided to the ALJ (Tr. 408-409). The entire report was translated on December 6, 2017, after the administrative decision was finalized by the Appeals Council, and is included in the administrative record before this Court (Tr. 53-55). Plaintiff argues that remand is required because the ALJ failed to

consider her complete medical history consistent with 20 CFR 416.912(d) since the ALJ did not review the third page of the report. The Commissioner agrees that the third page was not considered by the ALJ but contends that any error was harmless. The Commissioner is correct.

Plaintiff has presented this issue as a failure to develop the record. While the third page of the report should have been included in the record reviewed by the ALJ, the Court is not persuaded that this was not invited error. Plaintiff was represented by a Spanish-speaking lawyer in the administrative proceedings, and, despite the inclusion of the entire original report in Spanish but only two pages of translation, counsel made no objection to the record at the hearing. The ALJ asked Plaintiff's attorney if she had "had a chance to review the exhibit file," and counsel responded "Yes, I have." (Tr. 66). The ALJ then twice asked counsel if she had any objections to the exhibits, and she stated that she did not and indicated that the file was "complete" (Tr. 66-67, 70, 88, 89). In her brief to the Appeals Council following the ALJ's unfavorable decision, Plaintiff made no mention of a missing third page translation and, in fact, did not mention Dr. Ortiz' report at all (Tr. 311-312). While an ALJ has a basic duty to fully and fairly develop the record regardless of whether the claimant is represented by a lawyer, it remains Plaintiff's burden to prove she is disabled, and she is responsible for producing evidence in support of her claim. See Cowart v. Schweiker, 662 F.2d 731, 735-36 (11th Cir. 1981); Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam); Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997). The ALJ can hardly be faulted for failing to further develop the evidence given Plaintiff's representation that the record was complete. See Williams v. Comm'r, Soc. Sec. Admin., 703 F. App'x 780, 783 (11th Cir. 2017) (when the ALJ asked claimant's attorney whether the record contained everything that Williams wanted

the ALJ to consider and Williams's attorney answered that it did (with the exception of an unrelated record), "[t]he ALJ … fulfilled his duty to develop the medical record.").

Even if the ALJ had failed in his duty to fully develop the record, remand is necessary only if "the record reveals evidentiary gaps which result in unfairness or clear prejudice." Mosley v. Acting Com'r of Soc. Sec. Admin., 633 F. App'x 739, 742 (11th Cir. 2015) (quoting Brown v. Shalala, 44 F.3d 931 at 935 (11th Cir. 1995). There are no such gaps here. As stated by Plaintiff in the parties' joint memorandum:

> The last page of the report noted Ms. Ramos had painful events related to her marriage and studies (Tr. 55). Dr. Ortiz noted Ms. Ramos responded by becoming depressed, sad, and irritable. Id. Ms. Ramos also denied having intellectual limitations which led her to act impulsively. Id. Dr. Ortiz noted Ms. Ramos "nurtured unreal expectations about her cognitive abilities. She would exaggerate the possible outcomes of her social and vocational situations." Id. Dr. Ortiz opined:
>
> "Taking into consideration the results from the psychological tests and observations during psychotherapy, we can establish that [Ms. Ramos'] intellectual functioning shows moderate mental retardation. [Ms. Ramos] has developed adequate social skills; however, she relies heavily on others' support and supervision when performing her duties and responsibilities. She also has problems managing her feelings and emotions when facing interpersonal conflicts. It can be established that her self-esteem is moderate, so she tries to compensate by exaggerating her potential and her capacities. Based on the aforementioned, [Ms. Ramos] would benefit from psychotherapy and a vocational rehabilitation program." Id.

(Doc. 19 at 11). The information on the third page of Dr. Ortiz' report is duplicative of other sources in the record or is otherwise consistent with the ALJ's findings. The ALJ noted Plaintiff's professed difficulties with her marriage and her studies (Tr. 27-29). Plaintiff's complaints of depression also appear elsewhere in the record, and the ALJ found that Plaintiff's mood disorder was a severe impairment and discussed her treatment

for depression (Tr. 24, 28, 80, 355-57). The assessment of "moderate mental retardation" is also reflected in the record (Exhibit 9F -Tr. 400, 408) and this exhibit was considered by the ALJ (Tr. 27). Dr. Ortiz's statements that Plaintiff has developed adequate social skills but "relies heavily on others' support and supervision when performing her duties and responsibilities" and "has problems managing her feelings and emotions when facing interpersonal conflicts" do not differ markedly from Plaintiff's testimony (Tr. 27, 28, 55). These alleged limitations were considered by the ALJ and adequately accounted for in the formulation of Plaintiff's RFC, which limited Plaintiff to performing simple, rote, and repetitive tasks without production goals or quotas in a well-structured work environment where the job tasks do not vary from day to day, not interacting with the public, and occasionally interacting with coworkers and supervisors (Tr. 27). Lastly, Dr. Ortiz's opinion that Plaintiff "would benefit" from psychotherapy and a vocational rehabilitation program is not inconsistent with the ALJ's findings and does not tend to support a finding of disability (Tr. 24-31, 55).

In sum, Plaintiff points to nothing on the third page of the report that conflicts with her RFC assessment or indicates greater limitations than those found by the ALJ. Consequently, Plaintiff has not shown that the ALJ's error in failing to read the third page translation was clearly prejudicial. No remand is warranted. See, Wright v. Barnhart, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination); Caldwell v. Barnhart, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) (similar).

Listing 12.05(C)

Plaintiff contends that the ALJ erred at step three of the sequential evaluation in failing to find that she met the requirements of the "paragraph C" criteria of Listing 12.05

and because the ALJ failed to order a consultative examination for IQ testing.

At step three the ALJ must determine whether Plaintiff's impairments meet a Listing. See 20 C.F.R. §§ 404.1520, 416.920. "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)-(d)). "Conditions contained in the [Listing] are considered so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform [his] past relevant work or any other jobs." Richardson v. Apfel, 44 F. Supp. 2d 1264, 1265 (M.D. Fla. 1998).

The claimant bears the burden of proving that her impairment meets or is medically equivalent to a listed impairment. Wilkinson ex rel. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987); Bell v. Bowen, 796 F. 2d 1350, 1353 (11th Cir. 1986). The United States Supreme Court has held that "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria" and "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis original).

To satisfy Listing 12.05, Plaintiff must first demonstrate that she has "(i) significantly subaverage general intellectual functioning[,] (ii) with deficits in adaptive functioning[,] (iii) that manifested [during the developmental period] before age twenty-two." Rodriguez v. Comm'r Soc. Sec., 633 F. App'x 770, 773 (M.D. Fla. 2015) (citing Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir.1997); 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.00(A), 12.05). A claimant is presumptively disabled under subsection C if in addition to establishing all the basic requirements of Listing 12.05 she also establishes

evidence of (i) a valid IQ score between 60 and 70, and (ii) a physical or other mental impairment that imposes an additional and significant work-related functional limitation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C; Pettus v. Astrue, 226 F. App'x 946, 948 (11th Cir. 2007) (citing Crayton, 120 F.3d at 1219-1220); Rodriguez, 633 F. App'x at 773 (citing Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992)). In other words, Plaintiff must establish that her impairments satisfied all the criteria in the diagnostic description in the introductory paragraph of Listing 12.05, that she had a valid IQ score of 60 through 70, and another severe impairment. The ALJ found:

> Turning back to Listing 12.05, the requirements in paragraph A are met when there is mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded. In this case, these requirements are not met because there is evidence in the record of the claimant undergoing standardized testing and she has reported being able to handle many activities of daily living independently.
>
> As for the "paragraph B" criteria, they are not met because the claimant does not have a valid verbal, performance or full scale IQ of 59 or less and the "paragraph C" criteria of Listing 12.05 are not met because the claimant does not have a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The undersigned notes that, although there is evidence in the record of the claimant having IQ scores of 49 to 56, these scores are remote (2005) and were conducted when she was a child and are inconsistent with later reports of higher levels of adaptive functioning (including childcare, driving, etc.). Further, they are contradicted by other childhood intelligence testing, which indicated a full-scale IQ of 79, reflective of borderline intellectual functioning, rather than intellectual disability. In light of the inconsistency in the scores, the relatively remote nature of the lower IQ scores and the claimant's reported level of adaptive functioning, the undersigned does not find sufficient evidence to satisfy the Listing 12.05 criteria.

(Tr. 26). Plaintiff argues that her 2005 full scale IQ score of 49 established that she met the requirements of Listing 12.05, as that test was administered when she was 16 years old. To the extent there is any doubt about the validity of this score, she contends that the ALJ should have ordered a consultative examination for IQ testing.

While Plaintiff focuses on one test score, the ALJ correctly noted that there are a variety of IQ scores in the record and that the scores are inconsistent. In addition to Plaintiff's childhood scores, state agency psychological consultants and a consulting examining physician referenced IQ scores that ranged from 73 to 80, which were obtained after the test relied upon by Plaintiff (Tr. 96, 113, 364). That said, there is no statement as to the validity of any of the scores. While this could support Plaintiff's assertion that a consultative examination should have been ordered, such an examination is not necessary since the ALJ found that Plaintiff did not meet the other requirements of Listing 12.05 and that finding is supported by substantial evidence.

To meet the Listing, Plaintiff had to establish that she had deficits in adaptive functioning. See 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05. The Commissioner's policy states that adaptive functioning "refers to the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age." Program Operations Manual System 24515.056(D)(2), http://policy.ssa.gov/poms.nsf/lnx/0424515056; quoted in Schrader v. Acting Comm'r of Soc. Sec. Admin., 632 F. App'x 572, 576 (11th Cir. 2015). The ALJ found that Plaintiff was able to perform "a fairly wide range of activities of daily living," including taking care of her daughter, handling her personal care independently, preparing simple meals, performing simple household chores, driving a car daily to take her daughter to school and shopping for groceries (Tr. 29, 271, 272). The ALJ also noted that Plaintiff reads in

Spanish at the seventh-grade level, watches television and talks with her grandmother on the phone each week (Tr. 28, 344, 435). Plaintiff reported no problems getting along with family, friends, neighbors or others, does not need to be reminded to go places and does not need someone to accompany her when she does (Tr. 273-274). Thus, substantial evidence supports the ALJ's finding that Plaintiff has "higher levels of adaptive functioning (including childcare, driving, etc.)" and she does not have sufficient deficits in adaptive functioning to meet the requirements of Listing 12.05 (Tr. 26-28). See, e.g., Bouler v. Comm'r of Soc. Sec., 624 F. App'x 728, 729 (11th Cir. 2015) (holding that substantial evidence supported finding that claimant did not have sufficient deficits in adaptive functioning when she was able to care for her personal needs, drive, shop, visit her boyfriend, play games, and engage in simple but logical conversation and earned B's and C's in high school); Small v. Comm'r of Soc. Sec., No. 8:15-CV-1031-T-JSS, 2016 WL 1388240, at *5 (M.D. Fla. Apr. 8, 2016) (substantial evidence supported finding of failure to demonstrate deficits in adaptive functioning where Plaintiff performed a wide range of activities of daily living, including reading and writing, using the computer, counting small bills, cooking and preparing simple meals, watching television, shopping for groceries, personal grooming, and driving); O'Neal v. Comm'r of Soc. Sec., 614 F. App'x 456, 460 (11th Cir. 2015) (holding that substantial evidence supported finding that claimant did not have sufficient adaptive functioning deficits to meet requirements of Listing, when he helped with light yard work, cared for his two children, independently performed activities of personal care and daily living, and drove locally three times per week).

As the Commissioner's administrative decision was made in accordance with proper legal standards and is supported by substantial evidence, it is due to be affirmed.

## Conclusion

Upon consideration of the foregoing the Commissioner's final decision in this case is **AFFIRMED**. The Clerk is directed to enter judgment accordingly and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on August 17, 2018.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record